1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10   CALVIN WRIGHT,                          Civil No.   06cv2313-BEN (POR)

11                          Petitioner,      **PROPOSED FINDINGS OF FACT AND
                                             RECOMMENDATION THAT**
12            v.                             **PETITION FOR WRIT OF HABEAS
                                             CORPUS BE DENIED**
13   DON TAYLOR, Warden,

14                          Respondent.      **[Document No. 4]**

15   **I.      INTRODUCTION**

16          On October 16, 2006, Petitioner Calvin Wright ("Petitioner"), a state prisoner proceeding *pro*

17   *se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  On December 11, 2006,

18   his case was dismissed without prejudice and with leave to amend.  On January 18, 2007, Petitioner

19   filed his First Amended Petition ("Petition"), and the case was reopened on January 23, 2007.

20          This Court has reviewed the Petition, Respondent's Answer, Petitioner's Traverse, and all

21   supporting documents.  After a thorough review, this Court finds Petitioner is not entitled to the

22   relief requested and recommends the Petition be **DENIED**.

23   **II.     PROCEDURAL BACKGROUND**

24          Petitioner was convicted of resisting a police officer by force or violence pursuant to

25   California Penal Code § 69.  (Lodgment 1 at 4).  The trial court found true allegations that Petitioner

26   suffered six prior serious or violent strike offenses pursuant to California Penal Code §§ 667(b)-(I)

27   and 1170.12.  Id.  On August 5, 2002, he was sentenced to 25 years to life in state prison.  Id.

28          Petitioner filed an appeal to the California Court of Appeal, Fourth Appellate District,

1    Division One.  (Lodgement 1).  On June 20, 2004, the Court of Appeal affirmed the judgment.  Id.

2            Petitioner filed a petition for review in the California Supreme Court.  (Lodgment 2).  On

3    September 15, 2004, the petition for review was denied.  (Lodgment 5).

4            On October 16, 2006, Petitioner filed his first federal petition for writ of habeas corpus.

5    (Doc. No. 1).  On January 16, 2007, Petitioner filed his First Amended Petition.  (Doc. No. 4).

6            On March 9, 2007, Respondent filed a motion to dismiss.  (Doc. No. 7).  On July 9, 2007,

7    this Court issued a Report and Recommendation that Respondent's motion to dismiss be denied.

8    (Doc. No. 10).  On September 14, 2007, District Judge Benitez adopted this Court's Report and

9    Recommendation and directed Respondent to file an answer.  (Doc. No. 11).

10           On November 21, 2007, Respondent filed an Answer.  (Doc. No. 14).  Petitioner filed his

11   Traverse on December 19, 2007.  (Doc. No. 16).

12   **III.    STATEMENT OF FACTS**

13           The following facts are taken from the California Court of Appeal opinion in People v.

14   Wright, No. SD 2002DA1192 (Cal. Ct. App. Jun. 30, 2004).  (Lodgment 1).  The Court presumes

15   these factual determinations are correct pursuant to 28 U.S.C.A. § 2254(e)(1).

16           On January 1, 2002, about 8:45 a.m., Ronald Thompson was eating
     breakfast in his car while parked at his apartment complex.  Wright
17   approached the driver's side door of Thompson's vehicle and, in an angry
     tone, twice stated, "I should kick your ass."  Wright opened the car door,
18   assumed a fighting stance and repeatedly said, "I don't trust you.  I should
     kick your ass."  Thompson, who was "in complete shock," tried to close his
19   car door but could not because Wright was in the way.  After some
     discussion, Wright closed Thompson's door and left.  Thompson then drove
20   to the other side of the building and called the police from his cellular
     telephone.
21           El Cajon Police Officers Mark Barber and Timothy Caudell
     responded to the scene, where Thompson directed them to Wright's
22   apartment.  Gertrude McMarion answered the door, told the officers that
     Wright had left and refused to permit a search.  The officers returned to
23   Thompson and told him they lacked probable cause to enter Wright's
     apartment, but suggested that he call the police if he saw Wright again.
24           About 10 to 15 minutes later, Thompson called the police; Barber and
     Caudell returned to the apartment complex.  Barber waited by Wright's
25   apartment while Caudell searched for Wright.  Caudell found Wright and
     McMarion arguing in the laundry room.  Caudell instructed Wright to drop
26   the large trash bag he was holding and walk outside.  Wright looked at
     Caudell, but ignored the instructions and continued to argue with McMarion.
27   Caudell twice repeated the instructions, pulled out his pepper spray and again
     repeated the instructions.  Wright complied just as Barber arrived.
28           Caudell conducted a pat-down search and then had Wright sit on the
     ground.  After Wright indicated he was on parole, a records search revealed

Wright had a parole condition that precluded him from drinking alcohol. Because both officers smelled alcohol on his breath, Wright's parole officer had him placed on a parole hold. Caudell told Wright that he was under arrest and had him put his hands behind his back to be handcuffed. Although Wright complied, Caudell could not place the handcuffs on him because Wright was sitting directly in front of a soda machine. Caudell instructed Wright to stand; he squeezed Wright's fingers with one hand while reaching under Wright's armpit with his other hand in order to assist him.

As Wright stood up, he jerked his hands free and forcefully struck Caudell in the chest, causing Caudell to lose his balance, his sunglasses to fall out of his pocket and his radio-microphone to fall off his uniform. Wright fled; Caudell and Barber pursued him and radioed for assistance. An officer responding to the call located Wright under a stairwell and had him lay on the ground. When Caudell arrived, he noticed a slight odor of pepper spray in the area. As Caudell handcuffed him, Wright began to kick and attempted to spit on Caudell. As Caudell escorted Wright to the patrol car, Wright yelled, made "gurgling" noises and appeared as though he was going to spit at Caudell. Caudell grabbed Wright around his head to prevent Wright from biting or spitting on him. As other officers assisted, Wright kicked Caudell's legs two to three times before the officers placed him inside the patrol car. Wright then spotted Thompson and threatened to kill him.

Wright was taken to jail, where the officers had to restrain Wright to get him photographed. Wright attempted to bite Caudell and again acted as if he were going to spit on Caudell. After the struggle, Wright threatened to kill Caudell and his family. (Lodgment 1 at 1-4.)

**IV.    STANDARD OF REVIEW**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).  As amended, the AEDPA now reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding.

28 U.S.C.A. § 2254(d) (emphasis added).

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2).

See Williams v. Taylor, 529 U.S. 362, 403 (2000).  The threshold question is whether the rule of law

1  was clearly established at the time petitioner's state court conviction became final.  Id. at 406.

2  Clearly established federal law, as determined by the Supreme Court of the United States "refers to

3  the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-

4  court decision."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 71 (2003).  However, Ninth

5  Circuit case law may be "persuasive authority for purposes of determining whether a particular state

6  court decision is an 'unreasonable application' of Supreme Court law, and also may help us

7  determine what law is 'clearly established.'"  Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir.

8  2000).  Only after the clearly established federal law is identified can the court determine whether

9  the state court's application of that law "resulted in a decision that was contrary to, or involved an

10  unreasonable application of" that clearly established federal law.  See Lockyer, 538 U.S. at 71-72.

11       A state court decision is "contrary to our clearly established precedent if the state court

12  applies a rule that contradicts the governing law set forth in our cases" or "if the state court

13  confronts a set of facts that are materially indistinguishable from a decision of this Court and

14  nevertheless arrives at a result different from our precedent."  Williams, 529 U.S. at 405-06.  "A

15  state-court decision involves an unreasonable application of this Court's precedent if the state court

16  identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the

17  facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal

18  principle from our precedent to a new context where it should not apply or unreasonably refuses to

19  extend that principle to a new context where it should apply."  Id. at 407.  Under Williams, an

20  application of federal law is unreasonable only if it is "objectively unreasonable."  Id. at 409.

21       Further, a state court's decision results in a "decision that was based on an unreasonable

22  determination of the facts in light of the evidence presented in State court proceeding" if it "is so

23  clearly incorrect that it would not be debatable among reasonable jurists."  Jeffries v. Wood, 114

24  F.3d 1484, 1500 (9th Cir. 1997) (citations omitted).

25       A federal habeas corpus petition must allege a deprivation of one or more federal rights to

26  present a cognizable claim pursuant to § 2254.  A state's interpretation of its laws or rules provides

27  no basis for federal habeas corpus relief when no federal constitutional question arises.  Estelle v.

28  McGuire, 502 U.S. 62, 68 (1991) (stating that federal habeas corpus relief does not lie for errors of

state law, and federal courts may not reexamine state court determinations on state law issues). Habeas corpus proceedings under § 2254 measure state convictions against federal constitutional requirements applicable to the states.  A federal district court does "not sit as a 'super' state supreme court" with general supervisory authority over the proper application of state law.  Smith v. McCotter, 786 F.2d 697, 700 (5th Cir. 1986); see Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (federal habeas courts must respect state court's application of state law); Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990) (federal courts have no authority to review state's application of state law).  Instead, federal courts may only intervene in state judicial proceedings to correct errors of federal constitutional magnitude.  Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989) (stating that federal courts are not concerned with errors of state law unless they rise to level of constitutional violation).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision.  Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).  A state court need not cite Supreme Court precedent when resolving a habeas corpus claim.  Early v. Packer, 537 U.S. 3, 8 (2002).  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]", the state court decision will not be "contrary to" clearly established federal law.  Id.  If a state court fails to provide a reasoning for its decision, habeas review is not de novo, but requires an independent review of the record to assess whether the state court erred in its application of controlling federal law.  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

## V.    DISCUSSION

The instant petition raises four grounds for relief: 1) the trial court violated Petitioner's right to due process by admitting evidence of Petitioner's post-arrest jailhouse misconduct; 2) the trial court violated Petitioner's right to due process by refusing to give a unanimity jury instruction; 3) the trial court violated Petitioner's right to due process by giving an impromptu oral instruction; and 4) the trial court violated Petitioner's right to due process by failing to sua sponte instruct the jury on Petitioner's excessive force defense.  (Doc. 4 at 6-9).

//

**A.      Ground One: Admission of Uncharged Jailhouse Acts**

Petitioner's first ground of relief is a claim the trial court violated his right to due process by admitting evidence of Petitioner's post-arrest jailhouse conduct.  The trial court admitted evidence of Petitioner resisting to be photographed at the jail, requiring restraint by police officers, and threatening to kill Officer Caudell and his family.  (Supplemental Lodgement No. 9, Vol. II at 176-177, 200).

**1.      Trial Court's Admission of Jailhouse Struggle Evidence**

Petitioner contends the trial court violated his right to due process by admitting evidence of his jailhouse struggle with police because it was neither relevant nor material, was inflammatory and prejudicial, and was admitted as propensity evidence in violation of California Evidence Code § 1101(a).  (Doc. 4 at 6).  Respondent contends the trial court properly admitted evidence of Petitioner's jailhouse struggle with police because it was relevant to show a lack of mistake or accident when Petitioner unlawfully resisted a police officer.  (Doc. 14 at 9).

A state's interpretation of its laws or rules provides no basis for federal habeas corpus relief when no federal constitutional question arises.  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  Nevertheless, the Ninth Circuit has indicated state laws can give rise to liberty interests cognizable on federal habeas, and that a federal due process violation can arise from arbitrary rulings.  See Fetterly v. Paskett, 997 F.2d 1295, 1300 (9th Cir. 1993) ("[T]he failure of a state to abide by its own statutory commands may implicate a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation by a state, [and] Ninth Circuit precedent generally supports this proposition."), citing Ballard v. Estelle, 937 F.2d 453 (9th Cir. 1991).

Specifically with regard to evidentiary rulings, "a state court's procedural or evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process."  Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995).  Therefore, a federal court may not disturb on due process grounds a state court's decision to admit uncharged bad acts evidence unless admission of that evidence "was arbitrary or so prejudicial that it rendered the trial fundamentally unfair."  Walters, 45 F.3d at 1357; Jammal v.

1    Van DeKamp, 926 F.2d 918, 919 (9th Cir. 1991).

2         California Evidence Code § 1101(a) generally prohibits introducing evidence a defendant

3    committed acts, other than those charged, to prove he or she is a person of bad character or has a

4    criminal disposition.  Evidence Code § 1101(b), however, allows introduction of such evidence to

5    prove issues such as identity, intent, motive, and lack of mistake or accident.  People v. Kipp, 18

6    Cal. 4th 349, 369 (1998).  Nevertheless, "evidence of uncharged crimes is admissible to prove

7    identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently

8    similar to support a rational inference of identity, common design or plan, or intent."  Id.  Also,

9    uncharged misconduct is subject to exclusion if its probative value is substantially outweighed by a

10   danger of undue prejudice, confusion of the issues, or of misleading the jury.  Id. at 371.

11        In the last reasoned state court decision, the Court of Appeal held the trial court properly

12   admitted evidence of Petitioner's jailhouse struggle with police because they were relevant to show

13   a lack of mistake or accident when Petitioner shoved Caudell at the apartment complex and kicked

14   him on the way to the patrol car.  (Lodgment No. 1 at 7-8.)  The Court of Appeal specifically held:

15             Here, a necessary element of the charged crime required proof that Wright
               knowingly and unlawfully resisted a police officer. (Pen. Code, § 69.)
16             Wright's defense to this charge was that the officers misconstrued his actions.
               The evidence of Wright's jailhouse struggle with police, including his attempts
17             to bite and spit, were relevant to show lack of mistake or accident when Wright
               shoved Caudell at the apartment complex and kicked him on the way to the
18             patrol car.  As such, its admission did not violate the statutory restriction on
               propensity or character evidence. (§ 1101, subds. (a) and (b).)
19
20             Although Wright contends these uncharged acts were not sufficiently
               similar to the charged offenses to render them admissible under section 1101,
21             subdivision (b), only "[t]he least degree of similarity . . . is required in order to
               prove intent. [Citation.]" (Ewoldt, supra, 7 Cal4th at p. 402.)  Here, the
22             jailhouse incidents occurred on the same day, involved the same police officer
               and tended to show that Wright's unruly actions at the scene were knowing and
23             not the result of the pepper spray, accident or other innocent mental state as the
               defense claimed.
24             Wright contends the prejudicial effect of this evidence outweighed any
               probative value, mandating reversal. (§ 352.)  We disagree. The testimony of
25             the jailhouse altercation did not consume a great deal of time, the conduct was
               not remote and it cannot be viewed as more inflammatory than the charged
26             offense insofar as it also involved attempted biting and spitting.  Any prejudice
               to Wright was outweighed by the probative value of the evidence.
27   (Lodgment No. 1 at 7-8.)

28        In ruling Petitioner's due process rights were not violated by the admission of jailhouse

struggle evidence, the Court of Appeal relied on its conclusion the evidence was properly admitted pursuant to California law.  (Lodgement 1 at 4-8).  The record supports this finding.  The Court of Appeal engaged in an Evidence Code § 1101(b) analysis and admitted evidence of Petitioner's jailhouse struggle because it was relevant to show a lack of mistake or accident when Petitioner shoved Caudell at the apartment complex and kicked him on the way to the patrol car.  The Court of Appeal noted the jailhouse incidents occurred on the same day and involved the same police officer as the charged crime, thereby showing Petitioner knowingly resisted arrest.  Further, the Court of Appeal held any prejudice to Petitioner was outweighed by the probative value of the jailhouse struggle evidence.  In light of the facts in the record and the Court of Appeal's considerations, Petitioner is unable to demonstrate either the trial judge arbitrarily admitted the jailhouse struggle evidence or the appellate court arbitrarily rejected his claim.  Thus, Petitioner has failed to demonstrate a due process violation.  Fetterly, 997 F.2d at 1300.

Moreover, the Court of Appeal's decision the trial court did not abuse its discretion in admitting evidence of Petitioner's jailhouse struggles with police was neither contrary to or an unreasonable application of clearly established federal law.  Although the Court of Appeal did not discuss the federal aspect of Petitioner's claim, the Supreme Court has noted a state court need not cite Supreme Court precedent when resolving a habeas corpus claim.  Early v. Packer, 537 U.S. 3, 8 (2002).  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly established federal law.  Id.

Clearly established federal law requires only that admission of uncharged bad acts not be "arbitrary or so prejudicial that it render[s] the trial fundamentally unfair." Walters, 45 F.3d at 1357; Jammal v. Van DeKamp, 926 F.2d 918, 919 (9th Cir. 1991).  As stated above, the Court of Appeal did not arbitrarily admit evidence of Petitioner's jailhouse struggle; rather, the Court of Appeal admitted the jailhouse struggle evidence to demonstrate Petitioner's lack of mistake or accident when he resisted arrest.  The Court of Appeal also concluded any prejudice to Petitioner was outweighed by the probative value of the jailhouse struggle evidence, thereby indicating the admission was not so prejudicial as to render his trial fundamentally unfair.  Thus, the Court of

1  Appeal's decision was neither contrary to, nor an unreasonable application of, clearly established

2  law.  Accordingly, the Court RECOMMENDS the Petition be denied as to this ground for relief.

3            **2.       Threats Against Officer Caudell and His Family**

4            Petitioner contends the trial court committed prejudicial error in violation of his due process

5  rights when it admitted evidence of his jailhouse conduct, specifically the threats to kill Officer

6  Caudell and his family.  (Doc. 4 at 6).  Respondent contends Petitioner's claim fails because he

7  cannot show improper admission of the jailhouse threats "had a substantial and injurious effect or

8  influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

9  (Doc. 14 at 7).

10           In the post-AEDPA period, if a state court has conducted a harmless error analysis with

11  respect to a constitutional error, in order to grant relief the Court must determine "(1) that the state

12  court's decision was 'contrary to' or an 'unreasonable application' of Supreme Court harmless error

13  precedent, and (2) the petitioner suffered prejudice under *Brecht* from the constitutional error."

14  Inthavong v. Lamarque, 420 F.3d 1055, 1059 (9th Cir. 2005).  If the state court's harmless error

15  ruling is not contrary to or an unreasonable application of Supreme court precedent, courts must

16  defer to the state court's harmless error ruling.  Id. at 1061.

17           When the state courts have analyzed a constitutional error for harmlessness under Chapman

18  v. California, 386 U.S. 18 (1967), federal district courts on § 2254 habeas review must analyze

19  harmlessness under the standard set forth in Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

20  Medina v. Horning, 386 F.3d 872 (9th Cir. 2004) (not applying Brecht in post-AEDPA 2254 case

21  after finding that state court's application of Chapman was neither unreasonable nor contrary to

22  clearly established federal law); Penry v. Johnson, 532 U.S. 782 (2001) (applying Brecht in post-

23  AEDPA § 2254 case without discussing whether AEDPA abrogated Brecht).

24           Under Brecht, "the standard for determining whether habeas relief must be granted is

25  whether the . . . error 'had substantial and injurious effect or influence in determining the jury's

26  verdict.'"  Brecht, 507 U.S. at 623, 637 (quoting and adopting harmless error standard created in

27  Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  The Brecht harmless error analysis "protects

28  the State's sovereign interest in punishing offenders and its 'good-faith attempts to honor

1   constitutional rights.'"  Calderon v. Coleman, 525 U.S. 141, 146 (1998) (per curiam) (quoting

2   Brecht, 507 U.S. at 635).

3        The judge asks directly, "'Do I, the judge, think that the error substantially influenced the

4   jury's decision?'"  O'Neal v. McAninch, 513 U.S. 432, 436 (1995).  If a federal habeas judge is in

5   "grave doubt" about whether a constitutional trial error "had substantial and injurious effect or

6   influence in determining the jury's verdict," the error is not harmless and "the petitioner must win."

7   O'Neal, 513 U.S. at 436, 445. In Payton v. Woodford, 346 F.3d 1204 (9th Cir. 2003)(en banc), the

8   court overruled several cases which had assigned the burden of proof to petitioner and respondent,

9   and stated: "In the course of this inquiry, it is the State that bears the 'risk of doubt.' . . . We look to

10  the State to instill in us a 'fair assurance' that there was no effect on the verdict. . . . Only if the State

11  has persuaded us that there was no substantial and injurious effect on the verdict do we find the error

12  harmless."

13       Under Chapman, the prosecution has the burden of proving harmlessness, and "before a

14  federal constitutional [trial] error can be held harmless, the court must be able to declare a belief that

15  it was harmless beyond a reasonable doubt."  386 U.S. at 24 (emphasis added); Bains v. Cambra,

16  204 F.3d 964, 971 n.3 (9th Cir. 2000) ("The Chapman standard is a 'harmless beyond a reasonable

17  doubt' standard applied (at least for direct appeals) by all courts (state and federal) in reviewing

18  constitutional magnitude, trial type errors.").

19       The Court of Appeal held the trial court erred by admitting evidence of Petitioner's

20  uncharged threats against Caudell because it had no relevancy and was improper propensity or

21  character evidence.  Nonetheless, the Court of Appeal concluded evidence of Petitioner's jailhouse

22  threats constituted harmless error beyond a reasonable doubt due to the "substantial undisputed

23  evidence, independent of this conduct, that showed [Petitioner] resisted a police officer with force or

24  violence."[1]  (Lodgment 1 at 10).  Further, both counsel reminded the jury the jailhouse evidence was

25  not relevant as to Count 2.  "To the extent the jury may have considered this evidence for an

26

27  ─────────────────

28      [1] Although the Court of Appeal determined that Petitioner did not preserve his due process claim for appellate review, the court nevertheless conducted a harmless error analysis under Chapman.

1  improper purpose in relation to count 1, the error was not prejudicial as the trial court ultimately

2  dismissed this count." (Lodgment 1 at 10).

3      The Court of Appeal applied the harmless error standard set forth in <u>Chapman</u> and found

4  admission of Petitioner's jailhouse threats constituted harmless error beyond a reasonable doubt.

5  Basing its decision on the determination substantial undisputed evidence, other than Petitioner's

6  jailhouse threats, showed Petitioner resisted a police officer with force or violence, the Court of

7  Appeal's decision was not contrary to or an unreasonable application of the harmlessness standard

8  set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993). In light of the substantial undisputed

9  evidence independent of Petitioner's jailhouse threats and both counsel reminding the jury the

10 jailhouse evidence was not relevant to count 2, the Court of Appeal correctly resolved admission of

11 Petitioner's jailhouse threats did not have a "substantial and injurious effect or influence in

12 determining the jury's verdict." <u>Brecht</u>, 507 U.S. at 37. Accordingly, the Court RECOMMENDS

13 the Petition be denied as to this ground for relief.

14 **B.    Ground 2: Lack of Unanimity Instruction**

15     Petitioner contends the trial court failed to properly instruct the jury to agree unanimously as

16 to the act forming the basis for the offense of resisting a police officer. (Doc. 4 at 7). The jury was

17 presented with three separate and distinct incidents wherein Petitioner resisted police in a manner

18 that could have violated California Penal Code 69, namely, (1) striking Caudell as Caudell attempted

19 to handcuff Petitioner, (2) kicking Caudell in the shins on the way to the police car, and (3)

20 struggling with several officers at the jailhouse. Petitioner asserts the Court's failure to give a

21 unanimity instruction violated his Fourteenth Amendment right to due process. Respondent

22 contends Petitioner has failed to raise a federal question, and in any event, the state court's rejection

23 of Petitioner's claim was reasonable within the meaning of 28 U.S.C. § 2254(d). (Doc. 14 at 12).

24     In <u>Estelle v. McGuire</u>, the Supreme Court examined the constitutionality of jury instructions

25 and narrowed the inquiry of federal review to the question of "whether the ailing instruction by itself

26 so infected the entire trial that the resulting conviction violate[d] due process." 502 U.S. 62, 67

27 (1991) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141 (1973)). "Not every ambiguity, inconsistency or

28 deficiency in a jury instruction rises to the level of a due process violation." <u>Middleton v. McNeil,</u>

541 U.S. 433, 437 (2004).  Moreover, a single jury instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge."  Cupp, 414 U.S. at 146-47.  "An omission . . . is less likely to be prejudicial than a misstatement of the law" and the petitioner bears an "especially heavy" burden.  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

If there is a jury instruction error as to an element of the offense, it is subject to a harmless error analysis.  Neder v. United States, 527 U.S. 1, 9-11 (1999); Evanchyk v. Stewart, 340 F.3d 933, 940 (2003).  Under Brecht, "the standard for determining whether habeas relief must be granted is whether the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 623, 637(1993).  Neither party has the burden of proving or disproving that the error had the requisite influence on the jury's verdict.  See O'Neal v. McAninch, 513 U.S. 432, 436  (1995); Thompson v. Borg, 74 F.3d 1571, 1575 (1996).  Instead, the reviewing judge examines the record and asks, "Do I, the judge, think that the error substantially influenced the jury's decision?"  O'Neal, 513 U.S. at 436; Thompson, 74 F.3d at 1575.  If the judge has "grave doubt" about whether the error had a substantial and injurious effect on the verdict, the error is not harmless.  O'Neal, 513 U.S. at 436; Thompson, 74 F.3d at 1575.

Under federal law, the Constitution does not impose a jury-unanimity requirement in non-capital cases.  Garrett v. Solis, 2006 U.S. Dist. LEXIS 60609, *37 (E.D. Cal. Aug. 23, 2006) (citing Richardson v. United States, 526 U.S. 813, 821 (1999)).

Under California law, jury unanimity is a constitutionally based concept whereby a defendant is entitled to a verdict in which all twelve jurors concur, beyond a reasonable doubt, as to each count charged.  People v. Jones, 51 Cal.3d 294, 305 (1990).  Therefore, when more than one unlawful act could support a single charged offense, the prosecution must either elect which act to rely upon, or the jurors must be given a unanimity instruction telling them they must agree which act constituted the crime.  People v. Melhado, 60 Cal. App. 4th 1529, 1534 (1998).  Neither election nor instruction is required, however, if the case falls within the continuous course of conduct exception.  People v. Stankewitz, 51 Cal.3d 72, 100 (1990); People v. Avina, 14 Cal. App. 4th 1303, 1309 (1993).  Such exception exists where a statute defines an offense as continuous in nature, or where the unlawful acts are so closely connected they form a single transaction, the defendant offers

essentially the same defense to each act, and there is no reasonable basis for the jury to distinguish

between them.  Id.

California Penal Code § 69 penalizes "every person who attempts, by means of any threat or

violence, to deter or prevent an executive officer from performing any duty imposed upon such

officer by law, or who knowingly resists, by the use of force or violence, such officer, in the

performance of his duty."

The Court of Appeal concluded a unanimity instruction was not required under the facts of

this case. (Lodgement No. 1 at 12).  The Court held:

> Here, the second category of the continuous course of conduct
> exception applies to [Petitioner's] prearrest actions because they were part
> of a single unified course of conduct to evade arrest and were closely
> related in time and place, separated only by the three to five minutes the
> officers chased [Petitioner].  Additionally, the record refuted [Petitioner's]
> assertion that he presented varying legal defenses that called for a differing
> analysis as to each act.
>
> Even assuming defense counsel suggested differing defenses to
> each of the prearrest acts during closing argument, the continuous conduct
> exception applies unless there is reasonable basis for the jury to distinguish
> between the acts for the purpose of establishing the single count of
> resisting a police officer.  (*People v. Haynes* (1998) 61 Cal.App.4th 1282,
> 1295.)  Here, [Petitioner] did not testify and provided no evidence to
> contradict the officer's testimony. [Petitioner's] defenses depended solely
> on the jury's evaluation of the officers' testimony, and it is not reasonable
> to conclude that the jury would have found the officers' testimony credible
> regarding some of the acts but not credible with respect to others.

(Lodgement No. 1 at 13).

However, the Court of Appeal held Petitioner's actions at the jailhouse, which also involved

Caudell, were divisible and not part of the continuous conduct exception, because they were

interrupted by the ride to the jailhouse and involved other officers.  (Lodgement No. 1 at 13).

Nonetheless, the Court of Appeal held a unanimity instruction was not required in this case because

the trial court properly gave an impromptu oral instruction instructing the jury to only consider

Petitioner's prearrest actions with regard to count 2 (resisting a police officer).  (Lodgement No. 1 at

14).  Also, the "prosecutor's acquiescence to the court's instruction amounted to an election that

[Petitioner's] prearrest actions constituted the facts supporting count 2."  Id.  Similarly, the Court of

Appeal noted "defense counsel reiterated during his closing argument that [Petitioner's] prearrest

conduct was at issue in count 2."  Id.  Based thereon, the Court of Appeal concluded no unanimity

1    instruction was required in this case.

2         In ruling Petitioner was not entitled to a unanimity instruction, the Court of Appeal relied on

3    its conclusion the instruction was not required under California law.  Since "federal habeas corpus

4    relief does not lie for errors of state law," see Lewis v. Jeffers, 497 U.S. 764, 780 (1990), it is not the

5    province of a federal habeas court to re-examine state-court determinations on state-law questions.

6    A federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties

7    of the United States.

8         Moreover, the Court of Appeal's decision no unanimity instruction was required was not

9    contrary to or an unreasonable application of clearly established federal law or an unreasonable

10   determination of the facts.  First, the Court of Appeal's conclusion the continuous course of conduct

11   exception applies to Petitioner's prearrest actions was neither contrary to, nor an unreasonable

12   application of, the clearly-established Cupp standard.  Further, the Court of Appeal's determination

13   the trial court's oral instruction, and the prosecutor's consent thereto, acted as an election to focus

14   the jury's attention for count 2 on Petitioner's prearrest actions, leads to the conclusion the failure to

15   give the requested instruction did not render the trial so fundamentally unfair as to violate federal

16   due process.  Cupp v. Naughten, 414 U.S. 147 (1973).  While the Court of Appeal found no error in

17   the omission of a unanimity instruction, the Court of Appeal's decision correctly resolved whether

18   the lack of an instruction "had substantial and injurious effect or influence in determining the jury's

19   verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  Accordingly,  the Court

20   RECOMMENDS the Petition be denied as to this ground for relief.

21   **C.      Ground Three: Impromptu Oral Instruction**

22        Petitioner contends his due process rights were violated when the trial court gave an

23   impromptu oral instruction directing the jury to focus its attention on Petitioner's conduct at the

24   apartment complex rather than at the county jail in determining whether he was guilty of resisting a

25   police officer by force or violence.  (Doc. 4 at 8).  Petitioner claims the instruction was inaccurate

26   and constituted an improper limiting instruction because it failed to state the manner in which the

27   court ruled the jury could use the postarrest evidence.

28        Respondent contends Petitioner's claim is procedurally barred due to (1) Petitioner's failure

to raise the claim on federal grounds in state court, and (2) Petitioner's failure to object to the oral instruction at trial.  However, even if Petitioner's claim is not procedurally barred, Respondent contends Petitioner has nevertheless failed to demonstrate the oral instruction so infected the entire trial that the resulting conviction violates due process.

### 1.       Procedural Default

A state procedural default arises from the "adequate and independent state law doctrine," which provides the United States Supreme Court lacks jurisdiction to review a judgment of a state court "which rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991).  On direct review of a state court judgment, the resolution of a federal claim would not affect a judgment which rests on a state ground independent of the federal claim. Id.  The Supreme Court would, in effect, be issuing an advisory opinion on the federal claim, something the Court lacks jurisdiction to do. Id.

The adequate and independent doctrine has been extended to federal habeas actions. Although a federal habeas court does not review a judgment of a state court, it decides whether a state prisoner is in custody in violation of the Constitution or laws of the United States. Id. at 729-30.  When the "adequate and independent ground" for a state court's rejection of a federal claim involves a violation of state procedural requirements, a habeas petitioner has procedurally defaulted his claim, and this Court cannot reach the merits of the federal claim. Id.  To do so would allow a habeas petitioner to avoid the limitation on direct review by the Supreme Court, avoid the habeas exhaustion requirement, and undercut "the States' interest in correcting their own mistakes." Id. at 730-32.

However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989) (quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985), quoting Michigan v. Long, 463 U.S. 1032, 1041 (1983).).  Additionally, the Court may still reach the merits of a procedurally defaulted claim if the petitioner can demonstrate (1) cause for the procedural default and actual prejudice from the claimed violation, or (2) that the failure to review the claim would result in a fundamental

miscarriage of justice.  Coleman, 501 U.S. at 750.

Because procedural default is an affirmative defense, the state must initially plead procedural default.  Bennett v. Mueller, 322 F.3d 573, 585 (9th Cir. 2003).  Once the state has asserted the existence of an adequate and independent state procedural ground as an affirmative defense, the burden shifts to the petitioner who must place this defense at issue by "asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule."  Id. at 586.  If the petitioner meets his burden to place the defense at issue, the ultimate burden to demonstrate the adequacy of a state procedural bar is on the State.  Id.

Here, the last reasoned state court decision on this issue clearly and expressly stated denial of the claim rested on a state procedural bar.  (Lodgement No. 1 at 15 ("However, all objections to the oral instruction were waived because they were not tendered below.  (§ 353, subd. (a).))).  The Ninth Circuit has recognized and applied California's contemporaneous objection rule, under which a defendant must make an objection at trial in order to preserve a claim on appeal, as grounds for denying a federal habeas claim under the doctrine of procedural default.  See Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir. 1999).  Further, Respondent has asserted the state appellate court's finding of waiver constitutes an adequate and independent state bar, precluding federal habeas review.  (Doc. 14 at 17).  Therefore, the burden shifts to Petitioner to place this affirmative defense at issue.  Bennett, 322 F.3d at 586.

Petitioner, however, has not argued the state procedural bar is inadequate or inconsistently applied.  (Doc. 16 at 4-5).  Petitioner has cited no authority and no factual allegations to rebut Respondent's procedural default defense.  Therefore, Petitioner has not met his burden under Bennett.  Petitioner has also failed to demonstrate a miscarriage of justice would result absent review of the claim by this Court.  See Coleman, 501 U.S. at 748; Vansickel, 166 F.3d at 957-58.  Accordingly, the Petitioner's claim in ground 3 is procedurally barred and the Court is precluded from considering the merits of the claim.  Even if these claims were not procedurally barred, they

1   lack merit.[2]

2   **2.    The Merits**

3        Petitioner contends the trial court erred in giving the oral instruction because it was an

4   improper limiting instruction and was inaccurate. (Doc. 4 at 8). The trial court gave the following

5   impromptu oral instruction:

> [A]s to count 2 and the lesser offense thereof, your verdict or
> verdicts as to those offenses must be predicated upon the circumstances
> attending upon the events at the apartment complex...up to and including the
> point in time that [Petitioner] was placed in the police vehicle. Put a
> different way, although you may consider events that occurred thereafter,
> for example, at the police station or at county jail, the defendant may not be
> found guilty of count 2, nor guilty of the lesser offense of count 2,
> predicated solely upon his conduct at the police department or at the county
> jail. So the focus of those offenses is upon the events out at the scene, as it
> may generally be described.

12        As stated above, the constitutionality of jury instructions is assessed based on "whether the

13   ailing instruction by itself so infected the entire trial that the resulting conviction violate[d] due

14   process." Estelle v. McGuire 502 U.S. at 67 (quoting Cupp v. Naughten, 414 U.S. 141 (1973)). The

15   standard for federal courts reviewing jury instructions in a state criminal prosecution is "whether

16   there is a reasonable likelihood that the jury has applied the challenged instruction in way that

17   violates the Constitution." Id. (quotations and citations omitted). The Supreme Court's prejudice

18   standard for evaluating trial error on collateral review, as set forth in Brecht v. Abrahamson, is also

19   applicable. 507 U.S. 619 (1993).

20        The Court of Appeal found Petitioner waived all objections to the oral instruction because

21   they were not offered in the trial court. (Lodgement No. 1 at 15). Nonetheless, the Court evaluated

22   the merits of Petitioner's claims and found each claim "unavailing." Id. With regard to Petitioner's

23   argument the impromptu instruction was an improper limiting instruction, the Court of Appeal noted

---

25       [2]    In Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002), the Ninth Circuit has indicated that: "[C]ourts
26   are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard
     to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar." See Lambrix v.
27   Singletary, 520 U.S. 518, 525 [] (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved
     first; only that it ordinarily should be. It is wasteful of both our resources and that of the litigants to remand to the district
28   court a case in which that court improperly found a procedural bar, if the ultimate dismissal of the petition is a foregone
     conclusion.").

1   Petitioner never requested a limiting instruction asking the trial court to instruct the jury on how to

2   use the evidence.  Relying on <u>People v. Lang</u>, 49 Cal.3d 991, 1020 (1989), the Court of Appeal

3   concluded trial courts generally have no duty to give a limiting instruction absent a request by

4   defendant.

5          With regard to Petitioner's contention the impromptu oral instruction improperly instructed

6   the jury it could convict him for resisting a police officer by force or violence based on his postarrest

7   conduct, the Court of Appeal held the oral instruction, although possibly confusing, properly

8   focused the jury's attention on Wright's pre-arrest conduct.  (Lodgement No. 1 at 12).  Specifically,

9   the Court held, "[Petitioner] is correct that [the third] sentence improperly suggested to the jury that

10  it could consider his postarrest actions in connection with count 2, while the first sentence of the

11  instruction accurately stated that any verdict on count 2 "must be predicated" on [Petitioner's]

12  prearrest actions."  (Lodgement No. 1 at 15).  The Court further noted "this discrepancy created a

13  possibility that the jury would be confused or misled by the oral instruction."  <u>Id</u>.  Nonetheless, the

14  Court of Appeal held even if the jury considered Petitioner's jailhouse acts as part of count 2, the

15  error was not prejudicial.

16          Even assuming the jury was confused by the oral instruction or
        ignored it altogether, we conclude there was no prejudicial error because
17      substantial admissible evidence supported [Petitioner's] conviction that he
        resisted a police officer by force or violence and it is not reasonably
18      probable that the error of which [Petitioner] complains affected the verdict."

19  (Lodgement No.1 at 17-18).

20          The Court of Appeal's decision the trial court properly gave an impromptu oral instruction

21  was neither contrary to nor an unreasonable application of clearly established federal law.  The

22  Court of Appeal's analysis and determination substantial admissible evidence supported Petitioner's

23  conviction of resisting a police officer by force or violence indicates the oral instruction did not so

24  infect the entire trial so as to violate Petitioner's right to due process.  <u>Estelle v. McGuire</u>, 502 U.S.

25  at 72 (1991).  Further, in light of the substantial evidence independent of the trial court's impromptu

26  oral instruction and the Court of Appeal's conclusion it was not reasonably probable the error

27  affected the verdict, the Court of Appeal correctly resolved the oral instruction did not have a

28  "substantial and injurious effect or influence in determining the jury's verdict."  <u>Brecht</u>, 507 U.S. at

37.  Accordingly, the Court RECOMMENDS the Petition be denied as to this ground for relief.

**D.       Ground Four: Lack of Sua Sponte Instruction**

Petitioner contends the trial court committed prejudicial error in failing to instruct the jury on Petitioner's excessive force defense.  (Doc. 4 at 9).  By removing the excessive force portion of the standard instruction on resisting arrest and failing to give the key instruction related to the excessive force defense, Petitioner asserts the trial court violated his right to due process.  Respondent contends this claim is procedurally barred by Petitioner's failure to raise it at trial and Petitioner's inability to return to state court because of the ban on successive habeas petitions.  (Doc. 14 at 19). In the alternative, Petitioner has failed to demonstrate the lack of an excessive force instruction was improper or denied him due process.  (Doc. 14 at 20).

Due process requires that criminal prosecutions "comport with prevailing notions of fundamental fairness and that criminal defendants be afforded a meaningful opportunity to present a complete defense."  Clark v. Brown, 442 F.3d 708, 714 (9th Cir. 2006).  The failure to instruct on a defense theory in the case is error if the theory is legally sound and evidence in the case makes it applicable.  Id.  However, as set forth above, a petitioner is not entitled to federal habeas relief on an alleged instruction error unless petitioner demonstrates the "ailing instruction by itself so infected the entire trial that the resulting conviction violate[d] due process."  Estelle v. McGuire 502 U.S. at 72.  The only question for a federal habeas court is whether, "under the circumstances as a whole and given the evidence in the case, the failure to give the requested instruction rendered the trial so fundamentally unfair as to violate federal due process."  Cupp v. Naughten, 414 U.S. 141, 147 (1973).  "The burden on the habeas petitioner is especially heavy where, as here, the alleged error involves the failure to give an instruction."  Clark, 442 F.3d at 714.

The Court of Appeal held the trial court did not have a sua sponte obligation to instruct on excessive force.  (Lodgement No. 1 at 20).  The Court of Appeal noted a sua sponte instructional duty only arises if it appears the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense.  (Lodgement No.1 at 18).  Specifically, the Court held:

> Here, the testimony presented does not show that [Petitioner] used
> reasonable force in response to Caudell's use of excessive force. In front of
> the laundry room Caudell squeezed [Petitioner's] fingers with one hand and

1
2
3
4

       reached under [Petitioner's] armpit with his other hand to assist [Petitioner] off the ground for handcuffing. Although [Petitioner] now asserts that this amounted to excessive use of force, he did not complain at the scene, and Caudell explained that the technique he used was a standard way to assist a suspect from the ground in order to be handcuffed and that squeezing [Petitioner's] fingers was not a "pain compliance technique," although it may have caused some discomfort.

5
6
7

       Additionally, while being escorted to the police car, [Petitioner] yelled and tried to spit on Caudell. In response to [Petitioner's] actions, Caudell grabbed [Petitioner] around his head, not his throat, and moved behind him to prevent [Petitioner] from spitting on him or biting him. Because Caudell's actions were in response to [Petitioner's] unruly behavior, the record does not support a finding that Caudell used excessive force to overcome [Petitioner's] resistance.

8
(Lodgment No.1 at 19-20).

9
10
Based on the record, the Court of Appeal concluded the trial court did not have a sua sponte duty to instruct on excessive force.

11
12
13
14
15
16
17
18
19
       The Court of Appeal's decision the trial court did not have a sua sponte duty to instruct the jury on the defense of excessive force was not contrary to clearly established federal law.  In determining Officer Caudell did not use excessive force in response to Petitioner's resistance, the Court of Appeal's decision indicates the trial court's omission of an instruction on excessive force did not so infect the entire trial so as to violate Petitioner's right to due process.  Estelle v. McGuire, 502 U.S. at 72.  While the Court of Appeal found no error in the omission of the excessive force instruction, the Court's decision correctly resolved the lack of an instruction did not have a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 637.  Accordingly, the Court RECOMMENDS the Petition be denied as to this ground for relief.

20
**VI.    CONCLUSION**

21
22
23
24
25
       After thorough review of the record in this matter and based on the foregoing analysis, this Court recommends the Petition for Writ of Habeas Corpus be DENIED.  This Proposed Findings of Fact and Recommendation for Disposition of the undersigned Magistrate Judge is submitted to the United States District Court assigned to this case, the Honorable Roger T. Benitez, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (2007) and Local Rule 72.1(d).

26
27
28
       IT IS HEREBY ORDERED that **no later than <u>December 5, 2008,</u>** any party may file and serve written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

1     IT IS FURTHER ORDERED that any reply to the objections shall be filed and served no

2  later than ten days after being served with the objections.  The parties are advised that failure to file

3  objections within the specified time may waive the right to raise those objections on appeal of the

4  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

5     **IT IS SO ORDERED.**

6  DATED:  November 7, 2008

7

8                                        _____
                                         LOUISA S PORTER
                                         United States Magistrate Judge

9

10  cc:          The Honorable Roger T. Benitez
                 all parties

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28